**Pages 1 - 25**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

ADOBE SYSTEMS, INCORPORATED, a )
Delaware corporation,           )
                                )
          Plaintiff,            )
                                )
   VS.                          )     **NO. C 14-03721 EMC**
                                )
BARGAIN SOFTWARE SHOP LLC, a    )
Texas Limited Liability         )
Company,                        )
                                )
          Defendant.            )
                                )
_____ )

                       San Francisco, California
                       Thursday, November 13, 2014

            **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                       JOHNSON & PHAM LLP
                       6355 Topanga Canyon Blvd. - Suite 326
                       Woodland Hills, CA  91367
                BY:  **JASON R. VENER, ATTORNEY AT LAW**


For Defendant:
                       INHOUSE COUNSEL
                       Knight Ridder Building
                       50 W. San Fernando Avenue - Suite 900
                       San Jose, California 95113
                BY:  **ALI KAMAREI, ATTORNEY AT LAW**




Reported By:        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                    Official Reporter

**Thursday - November 13, 2014**                    **1:44 p.m.**

**P R O C E E D I N G S**

**---000---**

**THE CLERK:**  Calling Case C 14-3721, Adobe versus Bargain Software.

Counsel, please come to the podium and state your name for the record.

**MR. KAMAREI:**  Good afternoon, Your Honor.  Ali Kamarei for Bargain Basement.

**MR. VENER:**  Good afternoon, Your Honor.  Jason Vener for Adobe Systems, Incorporated.

**THE COURT:**  Okay.  Counsel, I will say that there's been a lot of activity in this case that has, frankly, been not a good use of time for either the parties or the Court, and that is the first initially filed Adobe action which erroneously joined a bunch of defendants; and then now the declaratory relief claim in Texas, which I will say at the outset has all the markings of an anticipatory suit such as to, in my view, vitiate any first-to-file claim; and now this case with all of the issues that have been raised.

And so there's been three actions filed just to simply get this case venued somewhere.  And I understand why people do this, but I think it's an illustration of why litigation costs and a lot of judicial time is spent in a way that I don't think is very socially productive.

But having said that, you're here and I need to rule on these matters.  So the first question is personal jurisdiction or not, and I think it's clear that the law of intentional tort and whether there's jurisdiction that lies in the residence of the plaintiff where the defendant allegedly commits an intentional tort against the plaintiff knowing that the plaintiff resides in the forum state, whether that's enough.

And it was clear that at one point that was the law and, you know, there are lots of Ninth Circuit cases that are examples of that; but in light of the Supreme Court's decision in *Walden versus Fiore*, I think now it's not so clear.  That you just don't look at whether the defendant knew when it committed an intentional tort that the plaintiff resided in California; and if so, that's the end of the inquiry.  You've got to look at the defendant's conduct and in connection with the forum state.

And in that regard, as we dig a little deeper, it does seem to me that there are three factors that would argue for jurisdiction.  Number one, courts have looked at, for instance, what kind of marketing through the Internet and whether an interactive Web site, as opposed to a passive Web site or a quasi-interactive Web site, was involved.  And I think here sales were made through a Web site that was interactive.

Second, we look at, you know, how much activity other than was actually generated or involved here in the forum.  Were

there meaningful sales made in the forum state?  And there are a number of District Court cases that have looked at sales even where it's 5 percent, .02 percent, some number, you know, several thousand dollars, $44,000, et cetera, et cetera, to find that there were meaningful sales.

And here it appears that it's undisputed that 5 percent of Bargain Software's sales were made just into the Northern District.  I think it was, what, 24 or something -- I forget the exact number -- in this district alone that is undisputed, and likely more.  So it's not an insignificant number.  It's not huge; but, perhaps -- and then a third factor, as the *Brayton Purcell* Ninth Circuit decision points out, is whether or not the activities of the defendant were done with an eye towards competing with the plaintiff in the forum so that there is some competitive harm.

And here, given the sales that were made in California and in the Northern District, allegedly, of unauthorized versions of the software that competed -- which, I assume, were less expensive than the authorized software, that that was a form of competition.

So it does appear to me that when you look at the traditional factors of whether the defendant knew the plaintiff resided here, which I think is a fair inference given the labeling on the box, given the notification on the Web site, that that is the case here; and then given the other three

factors, I think there is personal jurisdiction.

Now, I'll stop there.  I understand, you know, that personal jurisdiction has to be reasonable.  That is an additional factor there.  It also has to arise out of the activities alleged, and I think that's met.

And on the reasonableness test, the burden shifts to the defendants who make a compelling case that the exercise of jurisdiction would be unreasonable; and I think a number of factors here would indicate that that is not the case.  The sales that were made in this state were done intentionally. Bargain Software injected itself into the California economy.

There are, it is true, some inconvenience that will be suffered since Bargain Software is a small company located in Texas; but there's no indication here that the bulk of the witnesses in this case are going to come from Texas as opposed to, for instance, Adobe's witnesses who may be here; and I don't know about third-party witnesses.

I will say in that regard, and this also affects the 1404 claim, that my intent is, if this case is kept here, to make sure that witness convenience is accounted for in the discovery process.  So to the extent that there are key officials in Texas, I'm going to expect that their schedules be, and their locations, be accommodated; and that you-all can work out taking a deposition, for instance, in Texas or waiting for a convenient time when that person may be here.  But those are

the kinds of things that would be handled through supervision of the discovery process taking into account convenience of the witnesses who may be located outside of the state.

And the other factors, that California has an interest in adjudicating this dispute given it has an interest in protecting its citizens -- and Adobe is one of its citizens in a sense -- from trademark infringement and consumer confusion. And there are no obvious reasons why this forum would not be a viable forum compared to Texas.

And, finally, given the fact that a lot of this discovery, I assume, is going to be electronic, so all the documentation production, all those things, frankly, these days it matters little where somebody is.  It is done electronically for the most part, and so I don't think there's a huge inconvenience such that it would not be reasonable to exercise jurisdiction over Bargain Software.

So that's my analysis of the personal jurisdiction question.  If you want to persuade me otherwise, I'll certainly give you a chance to do that because I want to hear if I've gone off the track somewhere.

**MR. KAMAREI:**  Thank you, Your Honor.  May I address those issues, Your Honor?

**THE COURT:**  Yeah.

**MR. KAMAREI:**  Your Honor, I'm not going to focus on the interactive Web site, as well as the amount of the alleged

infringing activity, by the way, which BSS denies those infringing activities.

**THE COURT:**  Yes.

**MR. KAMAREI:**  Every software that BSS sells, the keys to those software are actually authenticated by Adobe itself after the download -- or before the download and it is authorized by Adobe.  So the keys are checked by Adobe, and the customers are able to use the software.  It is at that point that the end user signs the end user -- or assents to the end user license agreement of Adobe.

What the crux of the case really is about is that Adobe is changing its business model.  What it's doing is the boxes of software that it had sold prior to other distributors and retailers, it has now changed its business model and now it has elected to go on a prescription-based model where you download directly from Adobe and you use a monthly fee as opposed to paying one time at Fry's Electronics or some other distributor, you pay a fee and you start using the software.

This change in business model has brought about this enormous activity of Adobe in suing all the distributors not because they're being hurt or harmed by the sale of these distributors because these are not counterfeit software.  At least the ones that my client sells are not counterfeit software.

This is driven by the fact that Adobe has already sold

those products once to distributors; and now, because it wants to make another sale, a subsequent sale, of having people subscribe to Adobe to buy an additional software on a monthly basis, that is the impetus behind these activities of essentially filing suits against a lot of defendants nationwide in California.

And there have been other cases where the court has determined that, as it did with the first case that Adobe filed against the defendants in this case, that the joinder was improper and dismissed their case.

Now, I understand the Court views the case that we filed in Texas after the first case that Adobe got dismissed here as some sort of a forum-shopping attempt, although really it is the kettle calling the pot black on that issue.

**THE COURT:**  I suspect there's forum shopping on both ends here.

**MR. KAMAREI:**  But, at any rate, the subsequent -- subsequent to the filing of the lawsuit, Adobe took action in attempting through Google and through other -- I think it's Amazon or eBay, to prevent the sales of the software claiming that they are counterfeit products or illegal products.

That gave rise to the defendant's claims that Adobe is engaging in antitrust actions, and it is -- it gave rise to damages that are being claimed by BSS against Adobe.  And based on that, BSS decided to file a lawsuit in Texas where it is not

only a home state, but Adobe also engages heavily in sales and is a -- has offices there, has employees there, as well as everywhere else around the world, as well as Adobe also litigates in Texas frequently.  And so that was the impetus behind the filing of the lawsuit by BSS against Adobe in Texas.

Now, the Court mentioned the three prongs of the *Walden versus Fiore* case.  As far as the activity of the defendant with eyes towards competing with Adobe in this forum, I don't think there's anything to be said.  There's nobody that can compete with Adobe; and the sales that BSS makes, it's on its Web site.  It's everywhere.  Not just in the United States, but every in the world.  It's not directed specifically to California.

But those are Adobe products.  Those are products that are being authenticated by Adobe.  It is not --

**THE COURT:**  Well, that gets to the merits, whether these are authenticated products; and, therefore, perfectly legal and there's no violation of any licensing problems; and, therefore, not a trademark or copyright violation.  I understand that, but right now I've got to take the allegations as they are to determine venue and jurisdiction.

**MR. KAMAREI:**  But we can't do that.  We can't take the allegations as true.  When there has been evidence presented by the defendant, we cannot take the allegations as true.  Then Adobe has the affirmative duty to present evidence otherwise,

and they haven't done that.  So they cannot rest on their allegations anymore.

What they need to do is to bring evidence, and I doubt that they can because we know that the software that is being authenticated and used by customers is being authenticated by Adobe through Adobe keys.  So once those products are being authenticated by Adobe, it cannot be said that the defendant is competing with Adobe.

These are Adobe's product.  One cannot compete with Adobe when somebody sells Adobe products.  It is only if you sell something else.  If it's a counterfeit; if it is not the right product; if you have altered the product by, for example, adding things to it or taking things out of it; if you have done some sort of modification or something else to it, then you might be able to say that there is a competing.

But if a distributor or a seller is selling the same product that Adobe has manufactured and is authenticating, it cannot be said that there's competing.

**THE COURT:**  All right.  Let me get the response to this point about whether there's, in fact, competition in the forum via the defendant's alleged activities.  What about this point?

**MR. VENER:**  I'd like to start by saying, Your Honor, that on a pleadings motion, it's well-settled law that any factual disputes between the parties are almost always settled

in favor of the nonmoving party, in this case plaintiff Adobe.

And it seems that the crux of Bargain's argument is that there is authentication of the products that they are selling; and that, therefore, they are not committing copyright and trademark infringement.  However, that couldn't be farther from the truth.

What defendant's business model employs, based on Adobe's investigation of BSS or Bargain Software Shop's activities, is that they take Adobe's software, they modify the code so that it can then be uploaded to a server which is believed to be called a FetchApp server.  It's a third-party service.  It then solicits for -- or, rather, offers to sell Adobe digital products on its Web site.

When it receives those offers -- or, rather, when it receives a request to buy, it will then direct its customers to download this altered Adobe software, which is an illegal copy of Adobe software and also an illegal derivative work given the changes to the code that has been made, and a serial number key is provided to them.

In the cases that we've seen with regard to Bargain, these serial number keys are very often not authorized.  They came from a distributor who is not authorized to make that sale.  And these keys are being used to then unlock illegal copies of Adobe's products, which in itself is a violation of the DMCA's anticircumvention provisions by using a key they are not

authorized to use to unlock software they were not authorized to copy and not authorized to sell to begin with.

So in that sense, they are directly competing with Adobe in that they are selling counterfeit software and allowing their customers to use that software by providing them with keys that they weren't authorized to sell in the first place, Your Honor.

**THE COURT:**  Well, the general rule is that the plaintiff need only make a prima facie showing of jurisdictional facts on a motion to dismiss for lack of jurisdiction; and that to hold that I now have to resolve the merits of this case, whether or not these were authorized keys or not, whether the acts that were undertaken were, in fact, in violation of copyright laws because they're unauthorized, I mean, that's the trial.  I'm not going to try this case before I figure out jurisdiction.  That's not what the jurisdictional inquiry is about, and I'm not holding an evidentiary hearing so I don't need to get into that.

And so if you've got another argument, I'll hear it; but as far as I'm concerned, at least under the allegations and the prima facie showing, there was an interactive Web site.  That's not disputed.  There were sales made in California.  That's not disputed.

So the only dispute is whether or not there was actual competition here; and if there were sales that arguably

deprived Adobe of its otherwise stream of revenue or full recognition of revenue that it would have obtained absent the alleged conduct, that's competition.

Now, I know that's not -- we're not saying that happened. We may have to have a trial on this; but, you know, for me to resolve the ultimate probably merits question of this case seems a bit premature.

**MR. KAMAREI:**  Your Honor, and we're not really asking the Court to make any decisions as far as the merits of the case are concerned; but everything that counsel just talked about, it's nowhere to be found and, frankly, there are a lot of summarizations and generalizations.

Counsel uses the words "not authorized."  "Not authorized" basically means that these are not the distributors that Adobe would like to have, but that doesn't -- that doesn't mean anything; or they talk about "illegal."  These are all conclusions of law that we'll have to determine later.  These are just not facts.

And if the -- if the declarations that are put into evidence are looked at, they have no declarations of any of this sort to prove or to show that there's any competition between the parties.

I think that necessarily the reason the Court says -- you know, "an activity of defendant with eyes towards competing with Adobe in the forum," that's the language that the Court is

using, I don't think that there's anything in the allegations which show that.

They are essentially claiming counterfeit, but we are saying that when it comes to a tort, there's got to be an express -- expressly aimed activity at the court -- at this forum, and we lack that express activity towards this forum.

Now, the Court also talked about several other factors. As the Court noted, BSS is a small company in the outskirts of Austin, and they have one office there.  They're not even in the entire state of Texas.

Adobe is everywhere.  Adobe has the power to litigate everywhere.  Adobe has presence everywhere, and makes sales everywhere.  Adobe also litigates everywhere, including Texas. And Adobe has -- this is not the first defendant it has tried to do this.  Adobe has tried to pull in defendants from all over the country because they are actively engaged in forum shopping.

Now, we have filed a case in Texas.  There's also motions pending before the Texas case.  Adobe has brought a motion to dismiss, and we've opposed that; and we're waiting for the Texas court to make a ruling on the issue of jurisdiction and whether the case should be dismissed as well or not.

**THE COURT:**  What's the jurisdictional issue in Texas?

**MR. KAMAREI:**  I think they're -- I'm not quite sure exactly what they're claiming as far as there's no

jurisdiction.

**MR. VENER:**  Your Honor, the basis of the motion is that there's no specific or general jurisdiction in Texas, as well as -- a motion to dismiss for failure to state a claim was brought as well.

**THE COURT:**  Is there a venue motion?

**MR. VENER:**  It's a motion to dismiss and/or transfer, Your Honor.  So, yes, a venue motion.  The motion to dismiss for lack of jurisdiction and venue and the venue motion are a joint motion.

**MR. KAMAREI:**  Your Honor, as far as the -- I can't believe that they would actually file a motion to dismiss based on general jurisdiction.  The laws or the factors that go into general jurisdiction is if you have offices there, you have employees there, you have sales there, your sales are significant, you have bank accounts there; and Adobe has all of this.  They have, in fact, more offices in Texas than Bargain Software does, and for them to claim that there's no general jurisdiction is hard to believe.

**THE COURT:**  Is there a motion -- is there a 404 motion to transfer as well?

**MR. VENER:**  Yes, Your Honor, to this jurisdiction.

**THE COURT:**  And so that raises a different question, in that who should decide.

**MR. VENER:**  Well, at the moment, Your Honor, that

motion has been pending and I believe fully briefed for over two months now.  It was referred to The Honorable Judge Yeakel's magistrate judge for a determination, and to this day we do not have a determination.

THE COURT:  So that's been argued?

MR. KAMAREI:  It has not.

MR. VENER:  It hasn't been argued, Your Honor.  There was no hearing.

THE COURT:  It was pending?

MR. VENER:  Yes.

THE COURT:  So they intended to take it under submission upon briefing?

MR. VENER:  That's my understanding, Your Honor.

MR. KAMAREI:  And, Your Honor, so there's an issue with that case was filed first and the court in Texas may make rulings; and I think given that the Bargain Software has brought a case in Texas, that this Court should at least wait until the Court in Texas makes its ruling as well.

THE COURT:  And is there a first-to-file argument in the Texas court?

MR. KAMAREI:  They have indicated that this case, which is actually a later-filed case, is a first case, which is incorrect.

MR. VENER:  May I address that point, Your Honor?

THE COURT:  Yeah.

**MR. VENER:**  We've related this case to the Colorado Internet matter, which was the first case in which BSS was named as a defendant in this matter.  As the Court did when it took this case from The Honorable Judge Alsup, this matter was related to Colorado Internet, which was filed first.

During that time period, after that litigation was dismissed without prejudice for improper joinder, we were engaged with counsel for the defendants in settlement discussions and, you know, we were hoping to resolve this matter without further litigation.  And during that time, unfortunately, considerations and attempts to resolve this matter were taken advantage of, and a declaratory action, which was wholly anticipatory, was filed in Texas.

We then continued to have discussions with the opposing party who claimed that they -- you know, so long as we were trying to discuss settlement, wouldn't serve the action; and then they waited 67 days to actually serve this action delaying the amount of time that Adobe was actually able to seek its remedies in this case, finally forcing our hand to actually do something in the jurisdiction in which this matter was originally brought.

**THE COURT:**  Well, okay.  So there's a question of which is the real first-to-file case or the cognizable first-to-file case; but that then begs the question who decides which is the first-to-file case.  Because normally the

first-to-file case is the -- judge is the one who decides the application of the first-to-file rule; right?

MR. VENER:  Yes.

MR. KAMAREI:  Correct, Your Honor.

Your Honor --

THE COURT:  Now we have a dispute as to which is the real first-to-file case.

MR. KAMAREI:  There's no question that the Texas case is the first-to-file between these two parties.

THE COURT:  Well, there was a case pending in this court.

MR. KAMAREI:  Which was dismissed.

THE COURT:  Well, it was dismissed, but is there a rule that says that that no longer then qualifies as first-to-file?

MR. KAMAREI:  Absolutely.

MR. VENER:  No, Your Honor.

MR. KAMAREI:  The dismissal -- when a case is dismissed, the case is dismissed.  So that applies to a number of situations, including statute of limitations, including whether --

THE COURT:  Well, can you cite me a case that says the first-to-file rule -- under the first-to-file rule, if a case that was filed first in time was dismissed without prejudice, that no longer counts as the first to file?

**MR. KAMAREI:**  Your Honor, I don't have that case with me, but I will be happy to look it up and cite it for you.

**THE COURT:**  Do you have a contrary case?

**MR. VENER:**  I have contrary case law, Your Honor.

**THE COURT:**  What case is that?

**MR. VENER:**  There's a case that was decided in 2011 in the Northern District of California known as *Barnes & Noble, Inc.*  Unfortunately, the second name I'm unaware of, but the pin site is 823 F.Supp. 2d 980.  In that case courts have held that the filing of the Complaint is what triggers the first-to-file rule.

Regardless of whether plaintiff later amends the Complaint, it would stand to reason that filing of the Complaint is what triggers the first-to-file rule; and although this matter -- or, rather, the Colorado matter was dismissed, it was still the jurisdiction in which that case was --

**THE COURT:**  All right.  So that's not quite on point because that was about an amendment, not a dismissal.

**MR. KAMAREI:**  That's correct, Your Honor.

**THE COURT:**  Do you have any cases where there's an actual dismissal and it was determined which is the actual first to file, if such a thing exists?

**MR. VENER:**  Yes, Your Honor.  There's a case, it's unpublished but it is a Northern District of California case that was decided in 2013 called *Hilton versus Apple, Inc.*, and

the Westlaw citation is 2013 WL 5487317.  In that case the Northern District of California held that plaintiff was the first to file in the Central District of California despite the Central District's dismissal in part of plaintiff's First Amended Complaint for lack of standing and defendant's subsequent filing in the Northern District of California.

In other words, the Central District case was dismissed in part.  The Northern District case was initiated by defendant, but the Northern District decided that the Central District of California was the first-filed Complaint even though it was dismissed, and sent the case back to the Central District.

THE COURT:  All right.  That sounds closer on point.

MR. KAMAREI:  Your Honor, I object to the fact that it's an unpublished decision, Your Honor.  But, like I said, we'll -- I can cite to cases; but every case that I know of when a case is dismissed, that applies through a number of legal principles, including statute of limitations and including the determination of which one is a first to file after another case has been dismissed.

THE COURT:  Well, and what -- has this issue been raised as to who decides before the Western District of Texas?

MR. VENER:  In the Western District of Texas, Your Honor?

THE COURT:  Yes.

MR. VENER:  No.  I mean, it has been briefed for the

Western District of Texas, but nobody has, to my understanding, breached the subject of which court decides first other than it being the first-to-file court.

**THE COURT:** But that court is aware of the pendency of this action and the motions?

**MR. VENER:** Yes, Your Honor.

**MR. KAMAREI:** Yes, Your Honor.

**THE COURT:** And not said anything about, "Well, let California go first," or, "I'm going to assert Texas first"?

**MR. VENER:** The last action that The Honorable Judge Yeakel took in the Texas matter was to refer to his magistrate, and it's been with the magistrate for two months now, Your Honor.

**THE COURT:** That sounds like a good option. I think I'll refer this to a -- no.

(Laughter)

**THE COURT:** Well, I'll tell you this: First of all, I have the ability and I will make a ruling with respect to jurisdiction because that's a separate question from whether I should exercise that jurisdiction or whether I should transfer the case.

And I do find that jurisdiction obtains for the reasons stated; that beyond what I find sufficient facts to find that there was, at least as alleged, an intentional tort committed against a California corporation whose residence was likely

known to the defendant.

We do have three factors that I mentioned that exist here, and that includes the -- well, all three that I have stated. However, whether I should exercise that jurisdiction, transfer this case, not exercise venue under the first-to-file rule now raises the question -- it's a comity question to a certain extent -- who decides.

And this is not your typical case because now in dispute is what counts as a first-to-file case. We have to kind of determine what is a first-to-file case in order to determine who decides the question. And to the extent now you have cited some authority, at least this *Hilton* case, which I want to look at, and Mr. Kamarei wants to submit something, what I'm going to do is give you to --

MR. VENER: Before Your Honor rules -- and I'm sorry to interrupt -- there is also an exception to the first-to-file rule, which neither defendant nor I have addressed at this point, and it has to do with the lack of good faith and forum shopping by one party or the other.

THE COURT: No, I understand that. I understand once we get into the merits of the first-to-file rule -- the first-to-file rule, first of all, is only a rule of thumb. It is not dispositive.

The Court has exercised discretion in its equitable judgment in these matters; and incorporated in that is what I

alluded to at the outset, that there appears to be a decent argument that the lawsuit in Texas, filed somewhat on the heels of the initial failed filing here but after some -- apparently some settlement talks, has some of the markings of what's been called an anticipatory suit, which can vitiate the first-to-file rule.

On the other hand, it's kind of a weak anchor to say this is the first-to-file case in California, at least for purposes of a policy where there was a clear misjoinder, and -- which is not to be sanctioned by this court because that causes an expenditure of resources by all the misjoined defendants.  It causes an expenditure of court time when, frankly, Adobe should know better.

But that's assuming I'm the one who's going to decide this issue.  So before we get into the merits of first-to-file and 1404 and all that, we've got to make the initial decision who's going to decide -- do I defer to Texas, do they defer to me -- and that is somewhat tied up in determining, well, what is the first-to-file case because that generally dictates who decides.

So I would like to see if you have any cases on point, give each of you a chance to file something, just a list of cites.  I don't need a long explication.  If you've got cites on point on this question of what is a first-to-file for purposes of determining who the decider is, I'd like to see that; and I'll give you until end of the business day on Monday

to do a supplemental letter list of citations.

MR. KAMAREI:  Your Honor, should that be directed to the clerk or to --

THE COURT:  Yeah, you can file that.

MR. KAMAREI:  -- for filing or just to the Court's chambers?

THE COURT:  You should file it as a pleading, but you can do it on a letter if you want, or you can do it as a formal pleading.  I don't really care.  I just want the cites.

MR. VENER:  Just so that the pleadings don't get out of order here, Your Honor, is there a page limit that the Court would like to place on that?

THE COURT:  Well, I assume it's -- I'm just asking for cites.  Maybe a parenthetical that it wouldn't be more than a couple of pages.  I can't imagine there's that many cases.  If there are that many cases, just give me the best ones.  I'd say two-page limit.

Well, I think that's a critical question.  And I have your briefing on the merits of the venue and the first-to-file; and so if you want to add something to your papers now on the chance that I may be the one who decides this question to supplement what you've filed, I'll take a couple minutes to take your comments, but I have read the stuff and I'm familiar with your respective positions on that.

MR. KAMAREI:  Your Honor, I'm not going to address the

substance anymore.  I'll just file the additional citations on the first-to-file.

MR. VENER:  Same, Your Honor.

THE COURT:  All right.  Well, good.  This presents a nice law school exam question for the Bar exam.

All right.  Well, interesting.  So either -- so I do find jurisdiction obtains, but whether we keep this case or not will depend on who decides this case; and then if I decide that it properly -- the decision that it can properly vest here, then I will go forward.  If not, I will then defer to Texas.

MR. KAMAREI:  Thank you, Your Honor.

THE COURT:  All right.

MR. VENER:  Thank you, Your Honor.

THE COURT:  Great.  Thank you.

(Proceedings adjourned at 2:19 p.m.)

---oOo---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Saturday, November 15, 2014

_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
U.S. Court Reporter